OPINION OF THE COURT
Anthony A. Scarpino, S.
In this miscellaneous proceeding, Richard M. Copland (Copland), as co-executor of the estate of Lenore Lewis Abels (the decedent), petitions the court for a decree in accordance with EPTL 7-8.1 (d) reducing the amount of money to be transferred from the estate to the trustees of a testamentary pet trust established under the decedent’s will. Issue has been joined, and a stipulation was entered into between the interested parties which provides that discovery is waived, and the matter is to be submitted on the pleadings.
The decedent was married to Joel Abels (Joel), and they lived at 22 Normandy Lane, New Rochelle, New York (the home). They had a daughter who predeceased them on August 8, 2000 at the age of 46 years.
On February 16, 2003, the decedent executed an instrument which provided $115,000 in cash bequests to various charities for the care of animals and the rest of her assets in trust for Joel. If Joel did not survive her, all of her property (with the exception of the home) was to be sold and distributed to her named trustees to be used as follows: $35,000 in salary and a $5,000 bonus per year to Eugenia Chodnicka (Eugenia) (who was the decedent’s housekeeper); funds were allotted for Eugenia to maintain the home and care for her cats;[1] and when the last cat died, the home and its contents were to be sold, and the remainder distributed to 33 animal oriented charities in the percentages set forth in the instrument plus a $50,000 bonus to Eugenia. On that same day, Joel executed an instrument, which other than certain different general bequests, contained the *487 same pet trust with remainder to charities if the decedent should predecease him.
On January 24, 2007 Joel died. Sixteen days later, the decedent died. On August 13, 2007 letters testamentary and letters of trusteeship issued in Joel’s estate to Copland and co-fiduciary Michael Maino (Maino) (collectively, the co-executors), and on October 15, 2007 letters testamentary and letters of trusteeship issued in the decedent’s estate to Copland and Maino. An inventory of assets filed in 2007 reflected assets in the decedent’s estate totaling $4,761,346.[2]
Copland filed this proceeding and then an amended petition. His amended petition requests that the court (1) reduce the amount to be transferred to the trustees to either $440,000 or $1,000,000 minus $628,000 (the amount already expended) for an amount of $372,000 and (2) permit the sale of the home. In support of his amended petition, Copland asserts that the co-executors have been fulfilling the terms of the trust with estate funds because funds have never been transferred to the trust for the life beneficiaries. As to the decedent’s cats, he alleges that Gindy is seven years old and can be expected to live another 5 to 11 years, and Poke-A-Dot is nine years old and can be expected to live another three to nine years. Copland also states that the home needs significant repairs, the taxes and upkeep on the home are very expensive, and Eugenia has indicated a willingness to leave the home and have the co-executors find and pay for a suitable new place for her and the cats to live.
In response to the amended petition, Maino filed an amended answer, containing a host of extraneous information and then generally admitting most of the allegations and requesting that the court grant the relief requested by Copland.
People for the Ethical Treatment of Animals (PETA), Bide-A-Wee Home Association, Fund for Animals and Doris Day Animal League, several of the charitable trust remainder beneficiaries, filed an answer which denied knowledge or information sufficient to form a belief as to the bulk of the allegations in the petition and asserted an “affirmative defense” which stated that, while the petition alleges that the estate assets exceed $3.6 million, it fails to set forth the liabilities and assets on hand, making it impossible to determine what would remain in the *488 estate should the proposed reduction be granted and that the co-executors have failed to file state and federal tax returns. The pleading further prays that the court make a determination in the proceeding.
Eugenia filed an answer generally denying the allegations in the petition. She also asserted various “affirmative defenses” which included that the petition is based on misinformation that an agreement is in place for Eugenia to relocate with the decedent’s cats and the co-executors, having failed to timely file tax returns, are now hoping to reduce the pet trust so that the taxing authorities might consider a charitable deduction, thus perhaps minimizing tax liability. The answer further requests that the court deny the petition.
As a preliminary matter, in every proceeding before this court, the clear expression of the decedent’s intent is to be given effect (see Wager v Wager, 96 NY 164 [1884]).
EPTL 7-8.1 (a) authorizes the establishment of a trust for the care of a pet animal and the use of principal or income to be enforced by an individual designated for that purpose in the trust instrument or, if none, by an individual appointed by the court. The McKinney’s Commentary to the statute provides that, prior to its enactment, New Yorkers had to provide for their pets in less ideal ways which would not always insure that their wishes would be carried out regarding their animals. For example, a pet owner could give money to a person with an unenforceable request that he care for the pet, he could make a gift to a person contingent on his care of the pet, or he could give the pet and money to a humane society (Margaret Valentine Turano, Practice Commentaries, McKinney’s Cons Laws of NY, EPTL 7-8.1). The statute also provides that a court may reduce the amount of the property transferred to a pet trust if the court determines that the amount substantially exceeds the amount required for the intended use (EPTL 7-8.1 [d]).
Copland argues that the pet trust can be reduced if the home is sold, and Eugenia moved to a less expensive residence. Copland arrives at a sum certain by approximating the life expectancy of the cats and Eugenia’s monthly costs to take care of them.[3] He urges that this would be beneficial because the remainder of the trust would then be accelerated, the estate could possibly qualify for a charitable trust exemption, poten *489 tially reducing estate tax liability, and dispositions could be made to the 33 charitable remainder beneficiaries rather than when the last cat dies. He further argues that the reduction is necessary to meet the decedent’s wishes to benefit the charities as well as her cats.
In actuality, Copland’s prayer casts aside the decedent’s wishes. The decedent gave very specific instructions as to how she wanted her cats to be cared for. That care included Eugenia, her home, a salary and bonus to Eugenia, maintenance for the home and a stipend for the cats.[4]
Furthermore, after the decedent’s daughter and her husband predeceased her, her instrument makes clear that the primary object of her bounty became her cats (and not the charities). If she had wanted to dispose of her assets to give more money to the charities right away, she could have. Indeed, she gave $115,000 in cash bequests to the charities (including $25,000 to PETA). The face of the instrument makes plain that she knew that choice was available to her. She also could have chosen a less expensive option for the care of her pets. But she did not. Instead, as evidenced by article FIFTH of her will, she painstakingly planned out the care for her pets and set forth that the charities were to take only on the death of her last cat. Again, if she intended to benefit the charities over her pets, and create a charitable deduction, the instrument would have been drafted differently.[5]
In essence, Copland is asking for this court to rewrite the decedent’s will. The court may not override the expressed intention of a testator (see Matter of Knapp, 41 Misc 3d 1202[A], 2013 NY Slip Op 51556[U] [Sur Ct, NY County 2013]; Matter of Kastin, NYLJ, Aug. 1, 2013 at 30 [Sur Ct, NY County 2013]). Similarly, the very purpose of the statute was to provide certainty to a pet owner regarding the care of her animals. Given the existence of the statute and the facts present, the court could not sanction the premature termination of this trust.
*490 Additionally, Copland’s petition is largely speculative. There is no guarantee that Copland is correct in his estimates as to the life span of the cats[6] or his assessment as to the cost of alternative living arrangements for Eugenia and the cats, there has been no determination made on the accuracy of the assets and liabilities in this estate, and there is no guarantee that the IRS will agree that the estate will qualify for a charitable deduction.
Indeed, Copland offers no authority for the proposition that the IRS would offer a charitable estate tax deduction based on the facts present here where (1) the estate is seven years delinquent in filing a return and (2) there has been a de facto formation of the trust since the life beneficiaries have been receiving benefits for seven years.
Matter of Helmsley (31 Misc 3d 1233[A], 2009 NY Slip Op 52802[U] [Sur Ct, NY County 2009]), cited by Copland, had a very different set of facts and is distinguishable. In Helmsley, the pet trust was reduced from $12 million to $2 million because the trust was overfunded for the carrying out of the decedent’s wishes. Unlike Copland’s prayer for relief here, the petitioner in Matter of Helmsley did not seek to alter Mrs. Helmsley’s wishes and arrangements for her dog, Trouble. Simply put, Mrs. Helmsley had made a disposition to the trust greater than what was required to carry out her intentions.
This matter is more akin to Matter of Duke (NYLJ, Aug. 6, 1997 at 24, col 6 [Sur Ct, NY County 1997]), which was decided prior to the enactment of EPTL 7-8.1, which fact makes the case at bar even stronger against the reduction. In Duke, the court upheld the validity of a trust under Ms. Duke’s will for the benefit of her dog against a challenge by the Doris Duke Charitable Foundation, the residuary beneficiary of the estate, to invalidate it. In doing so, the court stated:
“In reaching the foregoing conclusion, the [c]ourt is cognizant of the tax and non-tax savings that would accrue to the Doris Duke Charitable Foundation if the trust were held to be invalid; the willingness of the Doris Duke Foundation for the Preservation of Endangered Wildlife and the Doris Duke Foundation for the Preservation of New Jersey Farmland and Farm Animals to care for the dog; and the possibility of future litigation arising with respect to *491 the trust. These factors, however, cannot justify invalidating an otherwise proper disposition.” {Duke at 25, col 1; see generally Matter of Kastin [refusing to apply anti-lapse statute and thus disinheriting children of predeceased sibling where decedent’s intent from plain language of instrument was clear, and objective was to identify and honor testamentary intent, and not further societal benefit].)
Based on the above, the prayers for relief requested in the amended petition are denied in their entirety.

. Copland alleges that, of the several cats which belonged to the decedent at the time of her death, only two remain.

. In his petition, Copland alleges that the value of the estate at the decedent’s death was $3,600,000 and that the home is worth about $300,000 to $500,000. On the inventory of assets, the home was valued at $1,000,000.

. In a conference before the court, there was also a suggestion made that Eugenia could return to Poland (her homeland) with the cats.

. One commentator has noted that planners often recommend that testators place their residences and farms in trust to properly care for the animals and to insure a vehicle for their intention that the “animals remain together in familiar surroundings” (see Frances Carlisle, Helmsley’s Pet Trust Raises Issues for Owners of All Income Levels, NYLJ, May 28, 2009 at 4, col 3).

. This same commentator has said that the “primary concern of a client when creating a pet trust is usually the animals and not the remainderman” (see Frances Carlisle, Remember the Family Pet in Estate Planning, NYLJ, July 16, 2004 at 5, col 3).

. If the cats live longer, there may be increased financial burdens on Eugenia which the decedent did not contemplate.